Good morning, Your Honors. My name is Lori Tyker, and I'm appearing on behalf of Mr. Brett Jones, the appellant, and I'm going to attempt to reserve two minutes on rebuttal this morning. To begin with, I would ask that you allow me to define the terms that we're dealing with this morning because this case is a little bit atypical. Mr. Jones was found guilty by a jury of first-degree murder and robbery after a nine-day trial that resulted in a guilty verdict. And an hour and 15 minutes after that, Mr. Jones entered into what was titled a guilty plea agreement, but it really wasn't. What it was was he entered into a sentencing agreement. And this agreement was that he would agree to a stipulated sentence of two terms of life without the opportunity of parole and robbery time to be argued. And unbeknownst to him, he also waived his right to appeal his trial issues that had resulted from the nine-day trial in front of a jury. What happened after that was a perfect example of everything that could go wrong from a due process perspective did in terms of what happened to him on appeal. Mr. Jones is entitled to have his federal claims found to be exhausted because any failure to exhaust on his part is excused by the state's failure to afford him any kind of effective state process. And if you take a look at what happened, you can see exactly every step of the way how so many things just went wrong. Mr. Jones filed a post-conviction petition in state court that was denied. Basically, the trial court judge that had heard the trial of the state post-conviction petition was brought in front of that judge. He raised, Mr. Jones, in proper person, raised numerous trial issues in that whole, a plethora of them, about 20 probably. He raised jury instruction issues. He raised prosecutorial misconduct. He raised ineffective assistance of counsel for the trial error. As a result of that, what happened was a hearing was called by the state court judge. Mr. Jones was not present. He was not there. He was at Ely, the maximum security prison in Nevada. No counsel was appointed to represent him, despite the fact that he had been sentenced to two sentences of life without the possibility of parole. This is discretionary under Nevada law in cases that don't result in a capital verdict. However, the district court judge is to consider the severity of the consequences facing the petitioner. Absent death, this is pretty much as good as it gets. The district court is also to evaluate whether or not the issues are difficult and whether or not the petitioner was unable to comprehend the proceedings before him in state post-conviction. Mr. Jones didn't have his file. That was stated during this hearing by the public defender that had, well, another public defender, the office that had represented him at trial. He was given no opportunity to respond to the state's answer, whereas even though prescribed by Nevada statute, he should have been given 14 days to respond to the motion to dismiss the petition. He wasn't given that. The hearing was held seven days later. And finally, the state prepared the order. The district court judge said, denied. We're not having a hearing. He's not getting counsel on this. The state prepared the order. The state prepares the order, and if you take a look at that order, which is found at EOR, the excerpts of record 14, the order there is wrong in the district court. They don't even address the fact that trial court issues are raised here, and they cite Dawson, an ineffective assistance of counsel of trial counsel, as a reason that there was no ineffective assistance of counsel at this. Further, the state preparing the order is contrary to Nevada law that is found in Byford, which, interestingly, is the same trial court judge that failed to have a hearing or appoint counsel or do anything in terms of what happened in state post-conviction. As a result of state post-conviction, Mr. Jones finds out that he wasn't there. He gets a copy of the findings of FAC conclusions of law, and he appeals that. He appeals it to the Nevada Supreme Court. And the Nevada Supreme Court, because he's an improper person, the entire record is transferred up to the court, which had to be fairly large with a nine-day jury trial. The Nevada Supreme Court takes a look at it. Mr. Jones also files a supplemental brief and a motion to remand. At this point, he's in the hole, ideally. He manages to get an inmate law clerk to assist him and is taking a look at all of this stuff and is told, wait a minute, you entered into what this guilty plea agreement, which I would argue is really a sentencing agreement, what you can challenge in post-conviction despite what your trial counsel told you. Is there anything in Nevada law that suggests that this had to be a sentencing agreement? I understand that you could characterize it that way, but it's pretty clearly labeled a guilty plea agreement. It seems to have all the elements that we typically find in guilty plea agreements that we see here, whether they're Federal or State. I mean, it's a convenient characterization, but it said it was a guilty plea agreement, and it very clearly sets out what he was waiving. It goes through all of the usual elements of voluntariness and I'm not intoxicated and so forth. So how do we get to recharacterize it now? Is there anything in Nevada law that would support that and say once the jury's come back, if you're going to agree to something, it really has to be a sentencing agreement and not? There's not. I'm using that because I believe that the way that this is phrased as a guilty plea agreement is misleading, and I would disagree with the fact that this guilty plea agreement sets out everything very, very simply and carefully in terms of what appellate rights Mr. Jones was giving up as a result of entering into this agreement. He had been found guilty by a jury. He'd been found guilty by a jury after a nine-day trial. He entered into this agreement where he, after being found guilty, pled guilty, and as a result of that, he entered into a stipulated sentence. If you take a look at the guilty plea agreement, what's important to note is the section in the paragraph in terms of what appellate rights you're giving up, and it's the classic Nevada section that is unbelievably confusing that states, and I can find it. This is found at EOR 82, the waiver of rights. The extent of the colloquy when he enters into this agreement with the trial court judges, do you understand that you're waiving important appellate rights? That's it. And Mr. Jones says yes. But it's set out there in No. 6. No. In No. 6, I would argue that after ---- I am waiving and forever giving up the following rights and privileges. No. 6, the right to appeal the conviction with the assistance of an attorney. Unless the appeal is based upon reasonable constitutional jurisdiction or other grounds that challenge the legality of the proceedings, that sentence has been interpreted to mean that he can charge, he can challenge the effectiveness, his entry of plea in order to receive the sentence. But he can't, he cannot specifically, except as provided in subsection 3 of NRS 174035, he did not enter into what that section says is a conditional plea reserving his right to appeal his trial court issues. That was not entered into as far as this document states. Mr. Jones' understanding was far different. Right. But the Nevada Supreme Court characterized it as a guilty plea, clearly, right? Yes. All right. So what do we do with that? I mean, under the AEDPA lens, don't we have to review that for clear error if you're saying, in fact, it wasn't a guilty plea? Yes. And that's the basis of basically the essence of your argument, isn't it? Well, the essence of my argument is that Mr. Jones' grounds should be found to be exhausted, and they have the right to be reviewed on the merits in terms of challenging the entry of that guilty plea agreement because he was given such an inadequate state process. He tried, he was an improper person, he did everything he possibly could to raise the right issues and for someone to hear them. And in both courts, he was just dismissed. I think that my argument is that this is the atypical perfect storm that happens with proper person litigants. And a proper person litigant who is facing the death penalty, that puts Mr. Jones into a situation where pursuant to Valerio or Phillips v. Woodward or Hendricks v. Zenon, there's not that many cases where a petitioner should get this kind of relief, but this is one of them. And this is one of them because what happened to him throughout the state process, which is essentially nothing. Thank you, counsel. Good morning. May it please the Court. Tom Gober from the Nevada State Attorney General's Office representing the warden. My understanding of the certificate of appealability in this particular case dealt with the question of whether or not the claims raised by Mr. Jones in the federal court are exhausted or not. Clearly, they are not exhausted. The first time that the actual claims that were presented to the federal court were ever raised in the state of Nevada occurred almost a year after he filed a post-conviction petition in the United States or in the state district courts, nine months after he filed a notice of appeal from the state district court's decision. And in an unauthorized, pro per, he was representing himself pro per, supplemental briefing where way deep into the appellate process, all of a sudden these four claims related to the plea proceedings finally popped up. The Nevada Supreme Court was cognizant of those claims. And in resolving the appeal that was before the court, in a footnote, noted that they And to the extent that they attempted to raise new claims, found that we have declined to consider them in the first instance. Okay. There were some additional proceedings that occurred in the State of Nevada. Is that in the first instance, is that referring to his failure to file them in the trial court? Yes, of course. That is, I believe, the claims that had been presented to the Nevada Supreme Court on appeal were these claims that Ms. Tyker has referenced to the court dealing with trial error and whatnot. Those were the claims that were properly before the court. And if you look at the order of affirmance, it's in my supplemental excerpts of records, pages 53 through 55, the Nevada Supreme Court deals with the fact that, oh, look at all these trial claims that you're raising in your petition. You've waived them by entering into this guilty plea agreement. And then the last page, footnote 5, I believe, references we've reviewed your filing, referring to the supplemental brief that he had filed and looked at them, but instructed we have declined to consider them in the first instance. They cite also to NRS 34810, which is ---- But they also say, if I have your reference correct, we conclude that no relief based on those submissions is warranted. Let me grab the supplement here. I mean, if I have footnote correctly, it says we've reviewed all the documents that Jones has submitted in proper person to the clerk of the court to the matter, and we conclude that no relief is based on those submissions as warranted. Then it adds, to the extent that Jones has attempted to present facts or claims in those submissions that were not previously presented, we declined to consider them in the first instance. So we don't know which claims they're saying we're not going to consider and which claims they're denying in the merits. Well, if we look at the record, the documents that were submitted in proper person to the clerk, we have the proper person supplemental brief. We also have the motion to remand that Ms. Tyker had referenced. They didn't grant the motion to remand. Well, I guess my point is, before you go into that, they're denying some of the submissions on the merits, and the Supreme Court's declining to consider other claims, and identify those specifically. We have to go to the record to figure that out if we can. Well, but they do clarify, that second sentence is clarified by the phrase, to the extent he attempts to present. I usually use that one. I don't know. I'm not sure entirely what it encompasses when I use that phrase, otherwise identify it. Well, I think clearly the four claims that were raised in the supplemental brief are claims that he's attempting to raise. All right. So given this statement, is it your position that those claims are procedurally barred or not? No. At that point in time, no, no. But, I mean, now if he attempts to file, files a petition for collateral review in state court, you're going to argue that this is going to, this was definitive. It's already been decided. Procedurally barred, right? No, no, no. What I believe that statement is saying is that we, they have not been presented to us. We declined to consider them. You do have a remedy. You can go back to state court. You will have an uphill battle because there is the bars of successive claims and timeliness that you're going to have to deal with. But that is something that we also dealt with in our briefing. So, but at this stage, you really believe those claims are procedurally barred under Nevada law, don't you? I mean, that's the position you would take in Nevada courts, right? That is the argument that I would perceive that would occur. I would not say at this particular point in time that those claims are procedurally barred because for me to argue that, I would have to say that the Nevada Supreme Court actually imposed those bars. And based on this order of affirmance, there's no citation to the NRS provisions that deal, that we typically see with procedural bars. I don't think we got that far. Ms. Tyker argued to the Court about, you know, inadequate state process that her client received and how, you know, he was mistaken, he didn't know that he was waiving appellate issues. Those are all issues that maybe could support a finding of good cause and prejudice to allow the Nevada state courts to hear these claims at some point in time and get to the merits of them. Nevada state courts have never had the opportunity to hear those claims because they were, because these claims were never fairly presented as that phrase is defined by Casey and Moore, by this court. This court in Casey v. Moore talks about fair presentation, contemplating, presenting Federal claims to the appropriate state courts. And in that opinion, it actually puts in parentheses, plural, state courts in the manner required by the state courts. It also talks about fair presentation that a claim must have been raised throughout the state appeals process, not just at the tail end in a prayer for discretionary review. Now, I think the case that we're dealing with right now falls right in the realm of we have a petitioner who files a petition, timely, it's a timely petition, and it's not until a year later when the Nevada Supreme Court is already obviously well deep into the appellate process here. They're one month away from issuing their order of affirmance, and then this supplemental brief pops up. You know, and basically they tell him, we're not going to consider it in the first instance. They're not saying that we're not going to consider these claims at all, ever, they're procedurally defaulted or anything like that. Go back to the State district court. If you really contend that the canvas was inappropriate, you didn't know that your appeal rights were being waived and this horribly inadequate State process, I mean, if that is something that can be borne out at an evidentiary hearing at the State district court in a forum that's regularly used to taking that type of evidence, you very well could get your claims on. But you're going to have to climb that hurdle first. As we stand right now, it's not procedurally defaulted. It's unexhausted. I would like to speak to one point about the level of Mr. Jones's knowledge about the waiver of his appeal. Judge Bybee has already pointed out in the GPA, it's right there in plain writing. If you read the canvas, I think we all already had a reference to that, that he understood that he was giving up significant appeal rights. That's what was discussed from the canvas. But I would submit, in addition to those two things, he was appointed a special public defender prior to sentencing because he had raised the issue that maybe he wanted to cause plea, maybe he had some concerns with that. We went on a two-month detour, three-month detour between his entering into a guilty plea agreement and his sentencing on January 21st of 2003, where the special public defender met with him, and he on the record came into court and first filed an affidavit which basically quotes, since the appointment of the SPD's office, I have chosen to proceed directly to sentencing and not file a motion to withdraw my guilty plea. And then on a canvas on December 3rd of 2002, on the record, he confirmed to the court that he had decided against challenging his guilty plea agreement. If he goes back to district court to try and prove how there was an inadequate state court process and he didn't know what his appellate rights is, he's going to have a tough way to go because he's going to have to show not only was his trial counsel ineffective in telling him that he didn't have his appellate rights, but a special public defender came in. Plus, there's a record. On the record, he's saying, you know, I'm not interested in, you know, there's nothing wrong with my appeal. I'm not challenging my plea. Okay? And so, you know, I wanted to clarify that issue for the court that he was very knowledgeable and was very well informed of the issues that he was waiving prior to sentencing. And I'll submit it unless there's any questions. Thank you, counsel. Just a couple of points. The Attorney General argued that, you know, we were way deep into the appellate process before these claims popped up. And I would take issue with that in that we weren't very far along at all in that he filed a state post-conviction petition and on appeal. He, after figuring some things out, he recognized that what he needed to challenge was this guilty plea. He recognized something that the trial court, quite frankly, got wrong in the post-conviction and didn't address at all in the state post-conviction petition in terms of what was appropriately in front of that court and what issues should have been heard at that time. The Nevada Supreme Court figured it out. And in response to your question, Judge Thomas, regarding concluding that no relief can be warranted, I believe that that can only be given to Mr. Jones' benefit in terms of if that's unclear, then Mr. Jones deserves to have that relief. He deserves to have some kind of appellate review of his issues. That's all he's wanted from the beginning. That's all he's tried to do on his own in proper person and was thwarted every step of the way. In terms of withdrawing his plea, again, the Attorney General talks a lot about how a couple weeks were taken to figure all of this out and decide what he wanted to do because, obviously, he had made an important decision in terms of the death penalty being taken off of the table. Mr. Jones, in his proper person pleadings in front of the Nevada Supreme Court, specifically states that his understanding from the beginning and throughout that entire process was that he would have the right to appeal what happened at trial. That was his understanding. In terms of there being a tough road to hoe, in terms of what he would have to prove as to whether or not that plea was knowing and voluntary and everything else, that's exactly what I'm here asking this court to allow to happen. I'd ask at this court, allow him to grant any other relief that may be appropriate in the interests of justice and grant him a way that he can appellate review on his case finally. Thank you. Thank you, Counsel. The case just heard will be submitted.
judges: Wallace, Thomas, Bybee